UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY DUBOIS,

                          Plaintiff.

        -against-

CITY OF WHITE PLAINS; DETECTIVE JIM
TASSONE, *Individually and in His Official
Capacity as a Police Officer Employed by the City of
White Plains*; POLICE OFFICER JAHMAR
CUNNINGHAM, *Individually and in His Official
Capacity as a Police Officer Employed by the City of
White Plains*,

                          Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/30/2021__

No. 16-cv-7771 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Timothy DuBois ("Plaintiff" or "DuBois") commenced the instant action against

Defendants Jaymar Cunningham, James Tassone, and the City of White Plains (collectively,

"Defendants") asserting federal claims under the Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"),

42 U.S.C. § 1985 ("Section 1985"), and state constitutional and common law claims.  (Amended

Complaint ("Am. Compl.") (ECF No. 32).)  Before the Court is: (1) Defendants' motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 56);

and (2) Plaintiff's cross motion for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure (ECF No. 66).    For the following reasons, Defendants' motion is

GRANTED in part and DENIED in part and Plaintiff's motion is DENIED.

## BACKGROUND

The following facts are drawn from the parties' Rule 56.1 submissions and the record. They are undisputed unless otherwise noted.

### The Interdiction of Heroin and Planning Meeting (June 3, 2014 – June 5, 2014)

On June 3, 2014, the United States Customs and Border Protection ("CBP") located at JFK International Airport ("JFK") interdicted a United States Express mail parcel (the "Intercepted Package") originating from India containing 116 grams of heroin and addressed to Onam Andrews at 11 Fisher Avenue, Apr. 3D, White Plains, New York 10606 (the "Target Premises"). (Defendant's Rule 56.1 Statement of Facts ("Defs' R.56.1") (ECF No. 58) ¶ 1.)  Initially, the CBP contacted Drug Enforcement Agency ("DEA") Task Force Officer Steve Smith ("TFO Smith") to confirm whether the DEA would handle a controlled delivery of the Package and was advised that the they would handle the delivery and take custody of the Package.  (Defendants Exhibit C ("DEA Report of Investigation") (ECF No. 57-3) at 2.)  Subsequently, the United States Attorney's Office for the Southern District of New York advised the DEA that they did not intend to prosecute the case.  (*Id.* at 2-3; Plaintiff's Response to Defendants' Rule 56.1 Statement of Facts & Statement of Undisputed Material Facts ("Pl's R.56.1") (ECF No. 62) ¶ 76.)

The relevant agencies involved in the investigation began to gain clarity on June 4, 2014, when DEA Task Force Officer John Heffner ("TFO Heffner") contacted the White Plains Police Department Narcotics Unit ("WP Narcotics Unit") and "was informed by Sgt. [Anthony Kressevich ("Sgt. Kressevich")] of the [WP Narcotics Unit] that White Plains PD would attempt the controlled delivery of the intercepted package" and then "[a]rrangements were made to turn over custody of the intercepted package to White Plains Police Department."  (DEA Report of Investigation at 3.)  Sgt. Kessevich subsequently advised White Plains Police Officer Jaymar Cunningham ("Officer Cunningham") that they would be assisting the DEA in a controlled

delivery operation involving narcotics.  (Defs' R.56.1 ¶ 4.)  Around that same time, DEA Task Force Officer Vincent Pisano ("TFO Pisano") took custody of the Intercepted Package at JFK, travelled to Westchester, and transferred custody of the Intercepted Package to Officer Cunningham.  (DEA Report of Investigation at 3.)  Officer Cunningham and White Plains Police Department Detective James Tassone ("Det. Tassone") received the package during a meeting with TFO Heffner and TFO Smith where they were informed that CBP had interdicted the Package and that it was destined for Onam Andrews at the Target Premises.  (Defendants' Exhibit D ("White Plains PD Incident Report") (ECF No. 57-4) at 4.)

Around that same time, Sgt. Kressevich directed Officer Cunningham to obtain a judicial search warrant for the Target Premises and the addressee, Onam Andrews.  (Defs' R.56.1 ¶ 6.)  Sgt. Kressevich also assigned Det. Tassone to the surveillance team surrounding the Target Premises.  (*Id.* ¶ 7.)   At approximately 10:57 a.m., a Search Warrant Affidavit and a Search Warrant Order for the Target Premises was presented to the City Court Judge Barbara Leak of the City of White Plains, and the Search Warrant Order was signed by Judge Barbara Leak.  (White Plains PD Incident Report at 4.)

The following day, on June 5, 2014, a meeting took place at the White Plains Police Department attended by Sgt. Kressevich, Officer Cunnningham, TFO Smith, TFO Heffner, members of the Department of Homeland Security, DEA, United States Postal Service Inspector Yui Chow, and various other federal agency officers, where they discussed a plan to make a controlled delivery of the Package to persons at the Target Premises.  (Defendants' Exhibit J ("Kressevich Dep. Tr.") (ECF No. 57-10) 43-47.)   In sum, the plan was that, later that day, the Package would be given to Inspector Chow, he would drive to the Target Premises while other law enforcement officers sat outside, Inspector Chow would go to the specific apartment, ring a bell,

attempt to locate Onam Andrews, and attempt to make a delivery of a package to Onam Andrews. (Kressevich Dep. Tr. 47:13-23.)   The record is less than clear as to whether the delivery was anticipated to take place at the Target Premises, or immediately outside the Target Premises.

At this point in time, prior to the controlled delivery, investigators did not have any information that DuBois was in any way connected with the Package.  (Pl's 56.1 ¶ 80.)  Nor did investigators have any information connecting DuBois to the Target Premises. (Pl's 56.1 ¶ 81.)

**The Controlled Delivery of the Package to DuBois (June 5, 2014)**

On June 5, 2014, Det. Tassone, at Sgt. Kressevich's direction, gave the Package to Inspector Chow.  (Defs' 56.1. ¶ 15.)   Inspector Chow arrived near the Target Premises, where a surveillance team was set up, and was provided with equipment capable of transmitting audio and video signals one way to a receiver.  (Defs' 56.1 ¶¶ 18- 19.)  There is a dispute as to whether there were gaps in the recording.  Sgt. Kressevich was the sole person assigned a receiver to access the recordings in real time.  (Defs' 56.1 ¶ 21.)   Inspector Chow was dressed as a U.S. Postal mail carrier, parked a postal van outside of the Target Premises, and spoke to a case agent with White Plains Homeland Security Investigations and Sgt. Kressevich prior to entering the building. (Defendants' Exhibit L ("June 11 Hearing Tr.") (ECF No. 57-12) at 15-17.)

Inspector Chow proceeded to Apartment 3D, knocked at the door and rang the bell, and Stephen Williams ("Williams") answered the door.  (*Id.* at 18.)  Williams identified himself as Onam Andrews, and physically matched a photograph that was shown to Inspector Chow prior to the controlled delivery as a potential resident of the Target Premises.  (*Id.* at 18-19 & 32-34.) Inspector Chow and Williams then engaged in a heated exchange where: (1) Inspector Chow told Williams that he had to come down to the postal vehicle to sign for the Package, (2) Williams became irritable and asked where the Package was from and whether it could be delivered to his door, (3) Inspector Chow advised that the Package was from India and that it could not be delivered

to his door, and (4) Williams said he could not come down to pick up the package as he had hurt his ankle.  (Defs' 56.1 ¶¶ 29-32.)

After this exchange, Williams initially agreed to go to pick up the Package, until another man, Plaintiff DuBois, came out of the Target Premises and agreed to come down and get the package instead of Williams.   There is no dispute that the subsequent conversation between Inspector Chow and DuBois was not properly recorded.   Instead, the parties dispute some of the substance of what was exchanged.  Defendants contend that Plaintiff DuBois identified himself as Onam Andrews while Plaintiff denies that he ever identified himself as Onam Andrews.   (Pl's R.56.1 ¶ 33.)  In any event, DuBois accompanied Inspector Chow downstairs, arrived at the Postal Van and signed a peach delivery slip for the Package as "George Andrews."  (Defs' R. 56.1 ¶¶ 36-37.)  The parties dispute whether Plaintiff ever took possession of the package but, under either account, Plaintiff was detained and handcuffed by two plainclothes offices soon after signing the delivery slip.  (Pl's R.56.1 ¶¶ 38-41.)   Around the same time that DuBois was detained, Sgt. Kressevich heard Inspector Chow say that the target is upstairs, which he interpreted to refer to Williams.  (*Id.* ¶ 43.)

There is some dispute over the role that Officer Cunningham and Det. Tassone played in Plaintiff's arrest.  On the one hand, Plaintiff contends that based on Det. Tassone's testimony, that Det. Tassone and Officer Cunningham were part of the arrest team.   (Pl's 56.1 ¶¶ 44-45.) Defendants contend that Det. Tassone was not present when the arrest took place and that, by the time that Officer Cunningham had arrived on the scene, Plaintiff was already under arrest and handcuffed.  (Defs' 56.1 ¶¶ 44-45.)  Ultimately, Plaintiff does not present any evidence suggesting that Det. Tassone had any direct contact with Plaintiff and the record indicates that Det. Tassone was not directly involved in apprehending, detaining, conversing with, or transporting Plaintiff.

Subsequently, an unidentified law enforcement officer told DuBois that he was under arrest for attempted possession of heroin, DuBois responded that he was unaware of what could have precipitated that arrest, and DuBois also advised him that Williams and "Mr. Andrews" were in the Target Premises before he stopped talking.  (Defs' R.56.1 ¶¶ 46-48.)  Another unidentified law enforcement officer sought to gain consent to search Plaintiff's phone but was denied permission to access his phone.  (Defs' R.56.1 ¶ 49.)  Afterwards, Sgt. Kessevich directed Det. Tassone to return the Package to the White Plains Police Department and Det. Tassone gave the Package to Officer Cunningham for storage in the property control room.  (Defs' R.56.1 ¶ 52.)  The contents of the package were confirmed as heroin.  (*Id.* ¶ 53.)

Officer Cunningham then debriefed Inspector Chow, who advised him that DuBois had substituted for Williams and took possession of the Package.  (*Id.* ¶ 54.)  Officer Cunningham then returned to the apartment with the Search Warrant, encountered Mr. George Andrews—and elderly resident of the apartment—who provided consent to the search, and during the search several phones were secured but no drugs were located.  (*Id.* ¶ 55; Pl's R.56.1 ¶ 81.)  Subsequently, Sgt. Kressevich made the decision to take Plaintiff to the White Plains Police Department and charge him with felony drug possession.  (Defs' R.56.1 ¶ 57; Pl's R.56.1 ¶ 81.)  Officer Cunningham prepared a Felony Complaint at Sgt. Kressevich's direction that contained charges against DuBois. (Defs' R.56.1 56.)

When DuBois and Williams were brought into the White Plains Police Department, DuBois initially requested medical attention but decided not to go in order to avoid delaying his arraignment.  Subsequently, during some indeterminate time between DuBois' arrest and his release on bail on June 13, 2014, DuBois and Williams spoke to each other and Williams told DuBois that he did not know anything about why the police had arrested them, and Williams did

6

not admit that he was directly responsible but expressed some vague sense of contrition that DuBois had gotten mixed up in the arrest.  (Defendants' Exhibit G ("Dubois Dep.") (ECF No. 57-7) at 106-108.)

### Subsequent Criminal Proceedings and Dismissal of Charges Against DuBois

On June 5, 2014, approximately two hours after his arrest, DuBois appeared before a state judge who held an arraignment the following day, and he was transported by Westchester County police to the Westchester Corrections Facility.  (Defs' R.56.1 ¶ 65.)  During the arraignment, both DuBois and Wlliams pled not guilty.  (*Id.* ¶ 67.)

On June 11, 2014, DuBois and Williams appeared for a felony hearing before City Court Judge Barbara A. Leak (the "Felony Hearing").  At the hearing, the Court found credible evidence established reasonable cause for the arrest of DuBois, to hold the case over for the action of the Grand Jury, and DuBois was remanded to the Westchester Corrections Facility.  (*Id.* ¶¶ 69-71.)  Two days later, on June 13, 2014, a bail hearing was held, bail was set at $2,500, paid by DuBois' wife, and DuBois was permitted to return home.  (*Id.* ¶ 73.)  On, or around June 5, 2014, Williams gave a written statement recounting the events leading to his arrest and asserted that neither he nor DuBois were aware of the contents of the Package.  (Defendants' Exhibit P ("Statement Form") (ECF No. 57-16).)

On March 11, 2015, during a conference before City Court Judge Brian Hansbury, the District Attorney of Westchester County moved to dismiss charges against DuBois on the basis that "Williams fully exonerated Mr. DuBois."  (Defendants' Exhibit Q ("Dismissal Hearing Tr.") (ECF No. 57-17).)  Plaintiff seems to contend that this is somehow related to the statement given by Williams in June of 2014 whereas Defendants contend that the decision to dismiss stemmed from William acceptance of responsibility and guilty plea in or around that time.  In any event the record is not clear on this point.

## LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment will not lie where there is a "dispute[ ] over facts that might affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not [ ] to weigh the evidence and determine the truth of the matter[.]'" *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In deciding a motion for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotations omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials

cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). To this end, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).

That said, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

In the instant action, Plaintiff asserted claims against Det. Tassone, Officer Cunningham, and Inspector Chow pursuant to Section 1983 for violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights to be free from: (1) malicious prosecution, (2) false arrest, (3) entrapment, (4) a speedy trial, (5) abuse of process, (6) illegal search and seizure, and (7) deprivation of liberty and/or property without due process of law. Plaintiff also asserts a 1983 claim for violation of his substantive due process rights. Plaintiff also asserted a conspiracy to violate his rights pursuant to Section 1985. Finally, Plaintiff asserted a claim against Defendant City of White Plains for failure to adequately train and supervise its employees. As discussed below, Plaintiff has abandoned his Section 1983 claims based upon an illegal search and entrapment. Plaintiff has also abandoned his conspiracy liability claims under Section 1985. Accordingly, the remaining claims to be considered on the parties' motions are as follows: (1)

Section 1983 claims for violation of his Fourth Amendment rights to be free from false arrest and malicious prosecution; (2) a Section 1983 claim for violation of his Sixth Amendment right to a speedy trial; (3) state law claims for abuse of process, malicious prosecution, and false arrest; and (4) municipal liability claims against the city of White Plains.  For the following reasons, the Court grants Defendants' motion for summary judgment except with respect to (A) Plaintiff's false arrest claims pursuant to both federal and state law against Officer Cunningham and (B) Plaintiff's abuse of process state law claim solely to the extent it is predicated upon the issuance of process prior to the Felony Hearing as against Officer Cunningham and Det. Tassone, and denies Plaintiff's motion for summary judgment.

## I.      Collateral Estoppel

Defendants contend that Plaintiff is collaterally estopped from challenging whether his arrest or prosecution were based upon probable cause based upon the finding of Judge Leak during the Felony Hearing that probable cause supported his arrest.  (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs' Mem") (ECF No. 59) at 10-13.) Plaintiff responds that collateral estoppel does not bar his claims because he did not have an opportunity to appeal the adverse finding in light of the dismissal of charges against him. (Plaintiff's Memorandum of Law in Support of His Cross Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl's Mem") (ECF No. 65) at 4-5.) The Court agrees with Plaintiff.

The Second Circuit has held that an indicted individual's "acquittal precluded the district court from giving collateral estoppel effect to determinations made at the suppression hearing earlier in the criminal proceedings" because there would have been no occasion to review the suppression hearing findings inasmuch as it was premature before the jury verdict and moot after he prevailed on the final judgment.  *Johnson v. Watkins*, 101 F.3d 792, 796 (2d Cir. 1996).  In

other words, that individual "had neither the opportunity nor the incentive to appeal the adverse finding of probable cause to arrest him" and thus collateral estoppel was inapplicable to a later challenge concerning the existence of probable cause. *Id.*

As in *Johnson*, the Court here is faced with a situation where DuBois had neither the opportunity before the charges were dismissed, nor an incentive afterwards, to challenge the adverse findings made at the Felony Hearing. Accordingly, Defendants' motion for summary judgment is denied to the extent it is predicated upon the doctrine of collateral estoppel.

**II.** **Probable Cause at the Time of DuBois' Warrantless Arrest**

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The general contours of a search and seizure under the Fourth Amendment are well-defined. A search occurs when "'the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). A "search" also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information. *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (S.D.N.Y. 2014). A seizure includes arrest and occurs when, considering all of the circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave. *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992). The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness. *Riley v. California*, 573 U.S. 373, 381-82 (2014). The reasonableness standard invokes a "'careful balancing of governmental and private interests.'" *Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)).

The Fourth Amendment permits warrantless arrests when "the arresting officer has probable cause to believe a crime has been or is being committed." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).  In assessing a warrantless arrest, the Court considers the "totality of the circumstances, from the perspective of a reasonable police officer in light of his training and experience, based on the facts known to the arresting officer at the time of the arrest." *Burgess v. DeJoseph*, 725 F. App'x 36, 39 (2d Cir. 2018) (internal citations and quotation marks omitted). Probable cause to arrest exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that would be sufficient to warrant a person of reasonable caution to believe that person being arrested committed a crime.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

The law regarding what constitutes probable cause to engage in a warrantless arrest of a recipient of a controlled delivery of narcotics is still in the process of maturing, but the inquiry appears to focus upon whether: (1) a package was interdicted containing contraband; (2) direct or circumstantial evidence indicates that the recipient was aware of the contents of the package; and (3) the recipient took affirmative steps to associate himself with the package.  In one of the more probing cases in this area, the D.C. Circuit found that probable cause existed for the arrest of a person on the following facts:  (1) "This was a controlled delivery, and the officers obviously knew that the package contained marijuana"; (2) "Appellant accepted a parcel addressed to 'Corey Johnson'" by "signing and printing 'Corey Johnson' on the form provided by Inspector Green, disguised as a U.S. Postal Service courier[.]" *Johnson v. United States*, 40 A.3d 1, 10 (D.C. 2012). Probable cause existed even though the appellant in that matter also made statements to Inspector Green denying that he was the recipient, Corey Johnson, and that the package was sent to an address that postal records did not identify as appellant's address.  *Id.*

12

In other reported cases upholding arrests arising out of controlled deliveries, probable cause was found where the arrestee took affirmative steps to associate himself with the package. For example, in *Spencer v. Connecticut*, probable cause was found where, "[d]uring a 'controlled delivery,' the Plaintiff, in full view of the police, accepted, took possession of, and placed in his residence a parcel containing a significant amount of marijuana." 560 F. Supp. 2d 153, 162 (D. Conn. 2008). Similarly, in *U.S. v. Gore*, an independent source stated that the defendant was known to her as "Williams," the package was addressed to Williams, and "the address on the package, and defendant's acceptance of the package . . . gave probable cause to believe that defendant was the intended recipient of the package (which the agents already knew to contain cocaine)." *United States v. Gore*, No. 94 CR. 282 (LMM), 1994 WL 698274, at *1 (S.D.N.Y. Dec. 13, 1994). By contrast, summary judgment has been denied where there were disputed facts regarding whether the recipient of a controlled delivery signed the delivery slip for the package or verbally associated himself with the package, and it was undisputed that the recipient denied ordering any package even though the package was addressed to the recipient. *Cruz v. City of New York*, 232 F. Supp. 3d 438, 459 (S.D.N.Y. 2017).

Here, the existing factual record is subject to several disputes that are at the core of the probable cause inquiry. On the one hand, there is no dispute that the package was addressed to "Onam Andrews," that Plaintiff signed for the package as "George Andrews," Plaintiff is not named Onam Andrews, and there was no evidence associating Plaintiff with the Target Premises prior to the execution of the controlled delivery. On the other hand, there is a dispute as to whether Plaintiff ever told the Inspector Chow that his name was Onam Andrews or took possession of the Package. As a matter of law, a reasonable jury could find sufficient facts for either Defendants or Plaintiff to prevail depending upon credibility determination with respect to the disputed facts. To

13

the extent a fact-finder concludes that Plaintiff represented that he was Onam Andrews, even if he also initially denied as much, the Court would be inclined to conclude that there was sufficient probable cause for arrest based on the holding of *Johnson*, 40 A.3d at 10.  To the extent that Plaintiff convinces the fact-finder that he never identified himself as Onam Andrews and never took possession of the Package, there is a strong argument that probable cause did not exist for the arrest.

Accordingly, at this stage of the litigation, the Court finds that there is a genuine dispute of material facts as to whether probable cause supported the arrest of Plaintiff.  In sum, the Court disagrees with both Defendants and Plaintiff as to whether the current record supports a finding either way as to whether probable cause existed at the time of Plaintiff's arrest.

### III.        False Arrest

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."  *Nelson v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 WL 3779420, at *5 (S.D.N.Y. Aug. 9, 2019) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), cert. denied, 528 U.S. 946 (1999)).  Under New York law, a plaintiff alleging false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotations omitted).

Here, Defendants argue that Plaintiff's false arrest claim cannot survive a motion for summary judgment because there was sufficient probable cause to support his arrest.  Plaintiff responds that it is entitled to summary judgment in its favor because Defendants did not have probable cause to arrest Plaintiff.  As discussed above, the Court finds that probable cause cannot be ascertained on the current record as credibility determinations regarding whether Plaintiff had

identified himself as Onam Andrews or took possession of the package are dispositive and those facts are in dispute.  Accordingly, to the extent that either Plaintiff or Defendants seeks summary judgment with respect to Plaintiff's false arrest claims under state and federal law based on the existence or non-existence of probable cause, their motion and cross motion, respectively, are denied.

Separately, Defendants make an off-hand and brief argument that the false arrest claim cannot be sustained against Det. Tassone because the undisputed factual record illustrates that he did not initiate the arrest or otherwise restrict Plaintiff's liberty.  (Defs' Mem. at 15.)  The Court is a bit troubled that Defendants buried this argument within a section of their moving brief entitled "The facts available to the Police Officers at the time of the arrest support a finding of probable cause," insofar as personal involvement is a distinct argument, and Plaintiff did not respond to the argument in any direct manner.

Nevertheless, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013).  As the Second Circuit has recently confirmed,

> [T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Here, Det. Tassone testified that he was assigned to the surveillance team outside of the Target Premises and, as part of this team he was "just put out there to act as an arrest team," (Defs' Exhibit I ("Tassone Dep. Tr.") (ECF No. 57-9) at 26:19-23), that "[o]nce we got the signal [to arrest DuBois], we all drove in front of 11 Fisher right to looking at 11 Fisher to the left.  Then by the time I got there, Mr. DuBois was also placed under arrest, handcuffed."  (*Id.* at 30:12-18.) Later he retrieved the Package from Sgt. Kressevich and returned the package to headquarters. (*Id.* at 32:15-20.).  He did not personally see the arrest occur.  (*Id.* at 33:9-17.)  Det. Tassone also did not have any contact directly with DuBois during the controlled delivery and arrest.  (*Id.* at 36:13-16.)  Det. Tassone also did not participate in the execution of the search warrant of the Target Premises or even know who was arrested while at the scene.  (*Id.* 37:20-38:5.)  Det. Tassone further testified that he was not involved in the decision regarding what charges were being made against Plaintiff.  (*Id.* at 40:8-10.)  During the Felony Hearing before Judge Leak, Det. Tassone also testified that he arrived at the scene "after the subject was placed under arrest" and that he "was assigned by Sergeant Kressevich to transport the package to the White Plains Police Department."  (Felony Hearing Tr. 7:14-24.)  In sum, his testimony was solely used to establish that he picked up the Package from the scene of Plaintiff's arrest, that he later handed it to Officer Cunningham, and that the package was assigned a case number that was consistent with the number associated with a report indicating that the Package contained heroin.  (*Id.* at 3:22-19:18.)

Under similar fact patterns courts have found that personal involvement was insufficiently alleged or demonstrated.  For example, in *Minter v. Cty. of Westchester*, the district court granted summary judgment for certain defendants where "not all defendants were involved in Minter's prosecution" because "criminal complaint was signed by [one of the defendants] alone" and it was undisputed that other defendants "played no role in the preparation of the felony complaint" and

it was "also undisputed that [other defendants], formed an 'outside support team' that did not enter the premises, and there is no evidence that they played a role in the felony complaint."  No. 08 CIV. 7726 WHP, 2011 WL 856269, at *10 (S.D.N.Y. Jan. 20, 2011).  *See also Cruz v. City of New York*, 232 F. Supp. 3d 438, 455 (S.D.N.Y. 2017) (finding that "evidence supplies an insufficient basis on which a reasonable jury could find that Donnelly was personally involved in the arrest" because "Donnelly did not come into contact with Cruz until after Cruz had been arrested."); *Celestin v. City of New York*, 581 F. Supp. 2d 420, 429 (E.D.N.Y. 2008) (no personal involvement in false arrest where "Celestin himself testified before the Grand Jury that he asked Det. Boyle at Caledonia Hospital whether he was under arrest, and Det. Boyle told him that he was not. Celestin was neither handcuffed at Caledonia Hospital nor during his transfer to Brooklyn Hospital later in the morning.").

Here, the undisputed record establishes that Det. Tassone did not have any personal involvement in the alleged false arrest of Plaintiff.  As the previous cases establish, merely being at the scene of arrest, but not participating in or directing the detention or transportation of the suspect or the filing of the felony complaint is insufficient to demonstrate personal involvement in a false arrest claim under Section 1983.

***

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 claim for false arrest against Det. Tassone.  The Court denies Plaintiff's and Defendants' motion for summary judgment with respect to Plaintiff's false arrest claim against Officer Cunningham pursuant to both state and federal law.

**IV.     Malicious Prosecution**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the

17

elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted).  In order to establish a malicious prosecution claim, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

The probable cause standard in a malicious prosecution claim is "slightly higher" than that required in a false arrest cases.  *Stansbury v. Wertman*,721 F.3d 84, 95 (2d Cir. 2013).  "New York Law requires such facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* at 95.  To hold a police officer liable for malicious prosecution, an officer "must do more than report the crime or give testimony," he must "be found to have initiated the prosecution." *Culpepper v. City of New York*, No. 14-CV-6585(ALC), 2016 WL 5334978 at *5 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks omitted) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)).  When analyzing such a claim, there is a presumption that the "prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Alcantara v. City of New York*, 646 F. Supp 2d 449, 457 (S.D.N.Y. 2009) (quoting *Crenshaw v. City of Mount Vernon*, No. 06-CV-2722, 2008 WL 445223 at *8 (S.D.N.Y. Sept. 30, 2008)).  The presumption may be rebutted where an officer "play[s] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello*, 612 F.3d at 163 (internal quotation marks omitted) (quoting *Rohman v. N.Y. City Transit Auth.*, 215 F.3d, 163, 217 (2d Cir. 2010)).

Furthermore, a malicious prosecution claim after an indictment may only succeed if the plaintiff establishes the indictment was "produced by fraud, perjury, the suppression of evidence

18

or other police conduct undertaken in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 282 – 83 (2d Cir. 2004).  Likewise, "[w]hen a plaintiff in a malicious prosecution case has been 'held by a Town Justice after a felony hearing on the charge, a prima facie case of probable cause for the prosecution [i]s established.'"  *Gisondi v. Town of Harrision*, 120 A.D.2d 48, 53 (2d Dep't 1986); *Hornstein v. Wolf*, 109 A.D.2d 129, 132 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 721 (1986); *Landsman v. Moss*, 133 A.D.2d 359, 360 (2d Dep't 1987).  The plaintiff must "demonstrate fraud, perjury or the withholding of evidence in order to overcome this presumption of probable cause."  *Gisondi*, 120 A.D.2d at 53 (citing *Hornstein*, 109 A.D.2d at 132).

Defendants argue that the malicious prosecution claim fails because Judge Leak determined that probable cause existed to support Plaintiff's arrest.  In response, Plaintiff does not contend that any of the Defendants engaged in fraud, perjury, or withheld evidence.  Instead, he recites the elements of a malicious prosecution claim under New York state law and points to facts that could support each element – chiefly that, (1) the prosecution was initiated by Officer Cunningham's signed Felony Complaint; (2) the prosecution terminated in Plaintiff's favor; (3) there was insufficient probable cause to support Plaintiff's arrest and prosecution based upon the evidence available at the time of the arrest; and (4) the lack of probable cause creates an inference of malice.  (Pl's Mem. at 10-11.)

Because Plaintiff has not presented any evidence of fraud, perjury, or the withholding of evidence, he has failed to meet his burden to overcome the presumption of probable cause *at the time of his felony hearing* based on the finding of Judge Leak.  Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's malicious prosecution claim and denies Plaintiff's motion for summary judgment with respect to his malicious prosecution claim.

V.        **Abuse of Process**

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Here, Defendants argue that Plaintiff's abuse of process claim cannot survive because Judge Leak's finding that probable cause existed at the Felony Hearing affirmatively demonstrates the existence of probable cause and a probable cause finding bars a claim for abuse of process. (Defs' Mem at 17-18.)  Plaintiff seems to think that Defendants were arguing that the claim is subject to collateral estoppel and solely argues that the claims are not barred under collateral estoppel.  (Pl's Mem at 12.)  The Court agrees that the claims are not barred under the doctrine of collateral estoppel but that hardly ends the inquiry.

As an initial matter, the Second Circuit has recognized that "[t]here has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law" and declined the opportunity to resolve the confusion. *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015).  Instead, the Second Circuit held that the sheer existence of confusion as to whether probable cause is a complete defense to an abuse of process claim under New York law establishes that the defendant was entitled to qualified immunity where a summons was issued and the legal impact of that summons was unsettled.  *Id.*

This Court has previously attempted to reconcile conflicting caselaw on whether probable cause is a complete defense to a claim of abuse of process by emphasizing a temporal distinction. On the one hand, probable cause *at the time the process* is issued constitutes a complete defense to a claim of abuse of process under New York law.  Thus, where defendants had probable cause to support an arrest warrant, an abuse of process claim could not be predicated upon that act of

initiating proceedings to obtain an arrest warrant.  *See M.C. v. Cty. of Westchester, New York*, No. 16-CV-3013 (NSR), 2020 WL 7481023, at \*26 (S.D.N.Y. Dec. 18, 2020) (collecting cases).  On the other hand, to the extent a party afterwards engages in bad faith conduct—*e.g.*, seeking a court order to extend the confinement of a person subject to an involuntary hospitalization in order to leverage a favorable settlement—the earlier existence of probable cause is irrelevant as to whether this new process is actionable as an abuse of process.  *Id.*

Here, the Court has concluded that there is a dispute of material fact as to whether probable cause supported Plaintiff's initial arrest.  Accordingly, to the extent that an abuse of process claim is predicated upon the filing of the Felony Complaint, there is a dispute of material fact that prevents this Court from ruling on the abuse of process claim.  By contrast, to the extent that the abuse of process claim is predicated upon the Felony Hearing, that claim must fail as Judge Leak found that probable cause supported the prosecution of Plaintiff.

## VI.     Sixth Amendment Claim

The Sixth Amendment guards against unjustified deprivations of liberty by requiring the federal government to provide specific procedural protections to all those accused of committing a crime.  Specifically, the Sixth Amendment protects the accused's right to a speedy trial, the right to a public trial, the right to a trial before an impartial jury drawn in a prescribed manner, the right to notice, the right of confrontation, the right to compulsory process, and the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court has held that, for the most part, the Fourteenth Amendment's Due Process Clause guarantees defendants in state courts the same fundamental procedural protections guaranteed to defendants in federal court under the Sixth Amendment.  *See Duncan v. Louisiana*, 391 U.S. 145 (1968) (jury trial); *Washington v. Texas*, 388 U.S. 14 (1967) (compulsory process); *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (speedy trial); *Pointer v. Texas*, 380 U.S. 400 (1965) (confrontation); *Gideon v. Wainwright*, 372 U.S. 335

(1963) (counsel); *see also Herring v. New York*, 422 U.S. 853, 857 n.7 (1975) (citing to prior cases as having incorporated the rights to public trial and notice (citations omitted)).

As described above, personal involvement is required to establish liability under Section 1983. "The absence of any facts alleging a defendant's personal involvement in the violation of a plaintiff's Sixth Amendment right to a speedy trial, therefore, dooms any such claim." *Brooks v. Panas*, No. 14-CV-4835 (PKC), 2016 WL 614684, at *4 (E.D.N.Y. Feb. 16, 2016). Thus, summary judgment has been deemed appropriate where "there is no evidence that [defendant] participated directly or somehow permitted the delay of [p]laintiff's trial, supervised anyone responsible [f]or the delay, was informed or even knew about the delay and failed to remedy the wrong or act on information indicating that unconstitutional acts were occurring, or created a policy or custom that led to the delay." *Barnett v. City of Yonkers*, No. 15-CV-4013 (KMK), 2018 WL 4680026, at *11 (S.D.N.Y. Sept. 28, 2018); *see also Davila v. Johnson*, No. 15-CV-2665 (AJN), 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("Petitioner does not allege that any of the remaining Respondents were personally involved in the violation of his speedy trial rights . . .Thus, none of the named Respondents can be held responsible under § 1983 for violation of Petitioner's speedy trial rights and those claims must be dismissed."); *Davis v. Nassau County*, No. 06-CV-4762 ADS WDW, 2011 WL 5401663, at *7 (E.D.N.Y. Nov. 5, 2011) (granting summary judgment where Plaintiff had "not raised a genuine issue of material fact regarding Reily's or anyone else's personal involvement in allegedly depriving him of his constitutional right to a speedy trial[.]").

Here, Plaintiff only demonstrates that Officer Cunningham drafted the charging instrument at Sgt. Kressevich's direction and that Det. Tassone testified at the Felony Hearing and did not otherwise participate in the conduct of the prosecution during the intervening months between that

hearing, on June 11, 2014, and the dismissal of all charges, on March 11, 2015.  At bottom, there is no allegation, nor any evidence suggesting, that Defendants played any role in the conduct of the prosecution after the Felony Hearing and it is clear that the matter was handled by the Westchester County District Attorney's Office as the relevant governmental body that moved to dismiss charges against Plaintiff.  Accordingly, Plaintiff has failed to demonstrate an issue of material fact that Defendants were personally involved in any Sixth Amendment violation.  Defendants' motion for summary judgment is granted with respect to Plaintiff's Sixth Amendment claim.

## VII.        Substantive Due Process Claim[1]

The substantive component of the Due Process Clause of the Fourteenth Amendment prohibits certain state actions "regardless of the fairness of the procedures used to implement them."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotation omitted).  The viability of substantive due process claims that, at bottom, challenge the existence of probable cause to arrest an individual is dubious in large part because such substantive due process claims are in strong tension with the "explicit textual source" doctrine.  The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, (1989)).

---

[1] Plaintiff and Defendants only discuss the merits of Plaintiff's due process claim as predicated upon the *substantive component* of that clause, and do not reference any procedural due process claim.  (*See* Pl's Mem at 17; Defs' Mem at 26-27.)  To the extent that Plaintiff's passing reference to a "deprivation of liberty and/or property without due process of law" in his Amended Complaint (Am. Compl. ¶ 41) was intended to assert a procedural due process claim, it is facially deficient considering that Plaintiff does not identify any insufficient notice or other procedural deficiency associated with his prosecution on the face of his Amended Complaint.  Accordingly, the Court dismisses that claim with prejudice.

Subsequently, the Second Circuit and district courts in this Circuit have held that claims sounding in search and seizure and pretrial detention are guided by the Fourth Amendment rather than substantive due process. *See, e.g.*, *Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir.2005) ("'Substantive due process analysis is . . . inappropriate . . . [where a] claim is 'covered by' the Fourth Amendment.'") (citation omitted); *Dorsainvil v. City of New York*, No. 19CV02323RPKSMG, 2020 WL 6482348, at *6 (E.D.N.Y. Nov. 4, 2020) ("Plaintiff's claim of a substantive due process violation based on reckless investigation must be dismissed because plaintiff's claim of reckless investigation sounds entirely in the Fourth Amendment."); *Bryant v. Steele*, 25 F. Supp. 3d 233, 246 (E.D.N.Y. 2014) (dismissing substantive due process claims predicated upon seizure of plaintiff by defendants); *Kastle v. Town of Kent*, N.Y., 13 Civ. 2256, 2014 WL 1508703, at *9–10 (S.D.N.Y. Mar. 21, 2014) ("[P]laintiffs' claims are largely premised on alleged conduct proscribed by the Fourth Amendment. The Court concludes plaintiffs' claims are therefore substantially 'covered' by the Fourth Amendment . . . and declines to expand the concept of substantive due process to encompass such conduct . . . Accordingly, plaintiffs' substantive due process claim is dismissed.")

Here, Plaintiff's attempt to bolster the viability of his substantive due process betrays that it runs afoul of the explicit textual source  clearly discloses that his substantive due process claim is entirely predicated upon the existence of probable cause to support his eight-day pre-trial detention.  For example, he states, "Plaintiff was arrested by Cunningham without legally sufficient probable cause and Plaintiff is entitled to summary judgment on this [*i.e.*, substantive due process] claim." (Pl's Mem at 17.)  As such, Plaintiff concedes that his substantive due process claim is exclusively predicated upon his pre-trial detention and that the viability of this claim hinges upon Fourth Amendment analysis, *i.e.*, the existence of probable cause.  Because Plaintiff's

substantive due process claim directly invokes and implicates the explicit protections of the Fourth Amendment and Plaintiff's Fourth Amendment claim for false arrest is still viable, the explicit textual source doctrine instructs that Plaintiff's substantive due process claim must fail. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's Section 1983 substantive due process claim.

## VIII.        Qualified Immunity

Defendants argue that qualified immunity bars Plaintiff's false arrest claim, and do not explain how qualified immunity would support summary judgment with respect to other claims, insofar as they exclusively focus on whether probable cause was supported at the time of Plaintiff's arrest and do not discuss the elements of any of the other claims.  (Defs' Mem at 20-26.)  The Court only addresses whether qualified immunity bars Plaintiff's Section 1983 false arrest claim and declines to sua sponte address whether qualified immunity would bar Plaintiff's surviving abuse of process claim.

The doctrine of qualified immunity gives "officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) "the specificity with which a right is defined"; (2) the existence of Supreme Court or the applicable circuit court case law on the subject; and (3) whether it was "objectively reasonable" for the defendant to believe the conduct at issue was lawful.  *See id.* at 231; *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013).

Here, Defendants concede that "[t]here is no doubt that the right to be free from arrest without probable cause was clearly established at the time of plaintiff's arrest." (Defs' Mem at 21.) Instead, they exclusively argue that qualified immunity is appropriate because Defendants' determination to arrest Plaintiff was objectively reasonable insofar as it was supported by arguable probable cause and that probable cause was further bolstered under the collective knowledge doctrine. (*Id.*) While the collective knowledge doctrine may have some utility in this case, Defendants do a poor job of explicating its applicability. In sum, Defendants recite caselaw regarding the collective knowledge doctrine for several pages and then fail to identify what information was in the possession of law enforcement officers besides the Defendants that they would ask the Court to be imputed to Defendants for the purposes of ascertaining probable cause. (*Id.* at 22-26.)

In any event, the Court disagrees that arguable probable cause is established here. The Court is aware that probable cause is a common-sense standard and believes that the jurisprudence concerning the existence of probable cause to arrest the recipient of a controlled delivery package of contraband should not defy common-sense. This counsels that in a situation where reasonable officers could disagree as to whether or not the recipient of contraband was aware of its contents, qualified immunity would be appropriate. For example, there may be cases where the recipient, upon taking the package, makes statements to law enforcement denying knowledge of the provenance or contents of the package, and one officer would view it as self-serving and another may view it as exculpating, and qualified immunity would be appropriate with respect to a false arrest claim. The record before the Court does not permit that sort of decision because there is still a dispute as to whether Plaintiff ever took possession of the package or identified himself as the recipient of the package.

Ultimately, the only way that the Court could find arguable probable cause on the current record was if it concluded that the law regarding what constitutes probable cause in the context of a controlled delivery was so unsettled that receipt of the package alone—without further indicia that the recipient associated himself with the package or was aware of its contents—was sufficient to constitute probable cause to support an arrest according to a reasonably competent law enforcement officer.  The Court does not think that the law is sufficiently unsettled to invite that conclusion and, as the district court in *Cruz v. City of New York* observed, "categorically insulating officers from liability for arresting persons to whom packages of contraband were addressed, where no other facts associated the addressee with the package and where the addressee dissociated himself with the package, is problematic for obvious reasons."  232 F. Supp. 3d at 459.  The same public policy concern is implicated for obvious reasons by this related fact pattern where qualified immunity would act to categorically insulate officers from liability for arresting persons to whom packages of contraband were not addressed solely based upon their signature of the delivery slip.

Accordingly, the Court finds that there are disputed issues of fact that prevent this Court from granting summary judgment based upon Defendants' claim of qualified immunity.

## IX.   **Municipal Liability**

The language of Section 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  As a result, a municipality "cannot be held liable solely because it employs a tortfeasor." *Id.*  Moreover, it is well-settled that a municipality cannot be held vicariously liable for the actions of its employees, *Barrett v. City of Newburgh*, No. 13-Civ-04118, 2014 WL 1092176, at *2 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 720 F. App'x 29 (2d Cir. 2017) (summ. order), and that a constitutional violation must exist in order to succeed on a claim for municipal liability. *Blue v. City of New York*, No.

16-CV-9990 (VSB), 2018 WL 2561023, at *11 (S.D.N.Y. June 4, 2018) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  In order to state a claim against a municipality under Section 1983, Plaintiff must establish "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).

A plaintiff may satisfy the "official municipal policy or custom" requirement by alleging the existence of:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who came into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted); *see also Fusco v. Cty. of Putnam*, New York, No. 15-CV-08132 (NSR), 2018 WL 1889070, at *4 (S.D.N.Y. Apr. 18, 2018).

Although a plaintiff is not required to identify an express rule or regulation to establish a *Monell* claim, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (explaining that only municipal officials who have "final policymaking authority" concerning the particular activities giving rise to a plaintiff's claims "may

by their actions subject the government to § 1983 liability"). "In the end, therefore, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (*quoting Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir.2008)) (internal quotation marks omitted).

In the present action, Plaintiff has not alleged, must less demonstrated, the existence of an unlawful official policy or custom, including any inadequate training. First, Plaintiff concedes that Defendants have received extensive training with respect to narcotics and investigations—*see* Defs' R.56.1 ¶ 11 & Pl's Mem at 18-19—and, accordingly, his theory rests on the allegation that "Cunningham failed to conduct a proper investigation and arrested Plaintiff without legally sufficient probable cause" at the direction of his supervisor Sgt. Kressevich "that they were going to arrest the first person that signed for the Package." (Pl's Mem at 19.) At bottom, this reflects a single incident in which the White Plains Police Department is alleged to have either miscalculated whether the recipient of a controlled delivery was likely to have committed a crime, or implemented a constitutionally offensive arrest strategy. There is no allegation that this extends to a systematic practice or that anyone above the rank of sergeant in the White Plains Police Department had any input into the plan to arrest the recipient of the controlled delivery. Accordingly, the Court grants summary judgment in favor of Defendants with respect to Plaintiffs' municipal liability claims against the City of White Plains.

## X.      Remaining Claims are Abandoned

Plaintiff abandoned his remaining claims for conspiracy liability pursuant to Section 1985 and claims arising from an unreasonable search or entrapment pursuant to Section 1983. Defendants moved for summary judgment on the grounds that entrapment is an affirmative defense to a criminal charge and not an affirmative civil claim (Defs' Mem at 28), and that Plaintiff had

insufficient evidence to support: (1) a prima facie claim under for conspiracy liability pursuant to 18 U.S.C. § 1985 (*id.* at 27-28) and (2) a Section 1983 claim arising from any Fourth Amendment violation of Plaintiffs' right to be free from an unreasonable search (*id.* at 18-20).  Plaintiff did not acknowledge these arguments in his memorandum in support of his cross motion for summary judgment, and affirmative states that he submits no opposition to those arguments through an attorney declaration.  (McClure Decl. ¶ 7.)  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Russell v. N.Y. Univ.*, No. 15 Civ. 2185, 2017 WL 3049534, at *34 (S.D.N.Y. July 17, 2017) (collecting cases where courts, on summary judgment, deem claim abandoned based on plaintiff's failure to address the claim).  Accordingly, the Court grants Defendants' motion for summary judgment to the extent Plaintiff asserts claims pursuant to Section 1985 and to the extent his complaint asserts a claim under Section 1983 for an unreasonable search or entrapment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment in GRANTED in part and DENIED in part, and Plaintiff's motion for summary judgment is DENIED.  The surviving claims are as follows: (1) Plaintiff's false arrest claims pursuant to both federal and state law against Officer Cunningham and (2) Plaintiff's abuse of process state law claim solely to the extent it is predicated upon the issuance of process prior to the Felony Hearing as against Officer Cunningham and Det. Tassone.  Likewise, to the extent Plaintiff pled a Section 1983 procedural due process claim, it is dismissed with prejudice.

The Court grants Defendants' motion for summary judgment with respect to Plaintiff's (I) Section 1985 claims, (II) Section 1983 claims for: (A) substantive due process, (B) malicious prosecution, (C) entrapment, (D) Sixth Amendment right to speedy trial; and (E) Fourth

Amendment illegal search and seizure; and (III) state law claim for malicious prosecution to the extent it was pleaded.  The Court further grants Defendants' motion for summary judgment with respect to municipal liability claims asserted against the City of White Plains.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 56 & 66, enter judgment in favor of Defendant City of White Plains, and remove Defendant City of White Plains from the case caption.

Dated:    March 30, 2021                                      SO ORDERED:
          White Plains, New York

                                               _____
                                                     NELSON S. ROMÁN
                                                  United States District Judge